SAMUEL A. BRADBURY & others *vs.* JOHN W. BIRCHMORE & another.

Norfolk. Jan. 27. — May 14, 1875. AMES & ENDICOTT, JJ., absent.

Land was conveyed to trustees for the purpose of building a house thereon for the rectory of a church, of which one of the trustees was rector. The trustees were authorized to mortgage the land in the sum of $3000, and to apply the sum "to erect and finish the buildings on the premises, or in aid of such erection." No personal liability was to be incurred by the trustees in executing the mortgage. On the erection of the house, the trustees were to convey the land to the church by a quitclaim deed, "subject to said mortgage if subsisting, and subject to all incumbrances, liens and mortgages thereon." The trustees covenanted to execute the trusts, but stipulated that they were not "to be subjected personally to any cost or expense, but all costs and expenses are to be chargeable upon said estate." The trustees completed the buildings, but expended more than $3000, and for the excess executed a second mortgage. When called upon to convey the property, they refused unless the liabilities incurred in building were paid or secured. The one who had been rector continued, for a time, to occupy the estate, with the knowl-

edge of the other trustee, after he ceased to be rector, and, after he left, the house was unoccupied, the trustees retaining the possession of it. *Held*, on a bill in equity against the trustees, to compel a conveyance, that the trustees had an equitable lien on the estate for the liabilities incurred by them in good faith, although they were greater than were absolutely necessary; and that the plaintiffs must pay the liabilities or secure the trustees before they were entitled to a conveyance. *Held, also,* that the trustees were chargeable with a fair rent for the estate while it was occupied by the rector, but were not chargeable for rent while it was unoccupied.

A rector of a parish belonging to the Protestant Episcopal Church, having a controversy with the parish, a board of reference was appointed in pursuance of the canons of the church, and a report made to the bishop of the diocese, setting forth that a dissolution of the connection between the parish and the rector was necessary, and recommending as conditions thereof that the rector resign his office, to take effect on a day stated, and the parish pay his salary. The rector requested a rehearing, which was granted, and at the rehearing the question came up whether the rector ought not to convey to the parish the title to the rectory building, the land of which had been conveyed to him and another person in trust. The board returned to the bishop their original award, with their reasons therefor, one of which was that the rector had "evinced no desire to convey the rectory to the parish, as bound by the deed of trust." The bishop of the diocese thereupon passed an order requiring the rector to relinquish his connection with the parish on the day stated in the award, on condition that the parish paid his salary; and also required the rector to convey the title to the rectory, held by him and his co-trustee, to the wardens and vestry of the church. The rector was paid his salary and resigned his office, but refused to convey the title to the rectory. *Held*, on a bill in equity by the wardens and vestry against the trustees to compel a conveyance, that the above recited proceedings had no bearing on the case.

BILL IN EQUITY, by the wardens and vestry of Christ Church in Hyde Park, a duly incorporated religious society, against John W. Birchmore and John E. White, praying that the defendants should show cause why they should not be ordered to convey a parcel of land with a rectory building thereon, in Hyde Park, to the plaintiffs. The bill also prayed for an account, an injunction to restrain the defendants from disposing of the land except to the plaintiffs, and for further relief. The case was reserved by *Morton*, J., on the bill and answer, and the report of a master, and was as follows:

On April 15, 1870, Reuben A. Richards conveyed the land described in the plaintiffs' bill to the defendants in fee, upon the following uses and trusts: "For the purpose of having and erecting thereon a house for the use of the rector of Christ Church in Hyde Park, and for the use of the successors of the said rector in said office, so that the rector of said church and his successors in said office may have the use and benefit of said lands and of the

buildings which may be constructed on said premises, during such time as said rector or his successors in said office may be respectively incumbents of said office, for their use, occupation and enjoyment ; and it is hereby stipulated and agreed that said trustees first named are authorized and empowered, in their capacity as trustees, to execute a mortgage on said premises in the sum of $3000, to secure a loan for said amount, which loan is to be applied to erect and finish the buildings on the premises, or in aid of such erection ; but in the execution of said mortgage, no personal liability is to be incurred by said Reuben A. Richards, or by said trustees or either of them, for or by reason of the making or executing such mortgage ; but said mortgage will constitute a valid incumbrance upon the estate and premises aforesaid, and said trustees are empowered to secure said loan by deed of mortgage upon said premises. And said premises are holden also upon this special trust, that in case said trustees or their successors shall determine to sell and dispose of said premises, they are authorized to sell and convey the same, in fee or otherwise, or in mortgage or otherwise, the consent of the rector, for the time being, being thereto in writing first obtained ; but upon sale, the net avails and proceeds of such sale shall be reinvested by said trustees for the time being in a lot and house for a parsonage for said church, and so that the uses and interests and purposes of the trust aforedeclared may be performed and fulfilled. And upon this further trust, that when said lot shall be improved and the buildings aforesaid erected for the uses designated, the said trustees shall make, execute, deliver and acknowledge a deed of conveyance, release and quitclaim of all said property and estate (subject nevertheless to said mortgage, if subsisting, and subject to all incumbrances, liens and mortgages thereon) to the rector, wardens and vestry of Christ Church in Hyde Park, in Massachusetts, for like uses as are hereinbefore designated, to wit, for the use of the rector of Christ Church and his successors in said office as aforesaid, free from the payment of rent therefor, either on the part of the rector or of said church. But in case said rector, wardens and vestry shall, upon the completion of said buildings, decline to accept the deed of said premises from said trustees, subject to the mortgage existing thereon, then this trust is to remain and continue until such time as the mortgage and incumbrances afore-

said shall be removed and discharged, and the estate shall be free from debt and incumbrance, and upon said premises being relieved and freed from mortgage, debt or incumbrance, upon trust that said trustees shall convey, quitclaim and release said premises, clear from incumbrances as aforesaid, to the rector, wardens and vestry of said Christ Church, for like uses as are hereinbefore designated, to wit, for the use of the rector of Christ Church and his successors in said office as aforesaid, free from the payment of rent, either on the part of the rector or of said church; and in case any vacancy shall occur in the trust, the church aforesaid, by its duly authorized officers or members, is authorized to appoint a trustee or trustees to fill such vacancy. And said trustees covenant that they will execute and perform said trusts, but they are not to be subjected personally to any cost or expense, but all costs and expenses are to be chargeable upon said estate. And upon said premises being vested in the rector, wardens and vestry aforesaid, they are to have full power to control, direct and apply said estate and the proceeds thereof, in such manner as in their judgment shall best promote and effectuate the charitable uses hereinbefore specified."

. The defendant Birchmore was at the date of the execution of the trust deed, and had been for some time before, the rector of said church, and continued to hold that office until May 15, 1872. The trustees named in the trust deed accepted the trust and proceeded at once to improve the lot of land and to build a house thereon in accordance with the requirements of the deed. Before the execution of the trust deed, it had been the understanding of the parties that the conveyance would not be made by the grantor until Birchmore should raise the sum of $1000 in aid of the building to be erected on the premises. The sum of $1008 was so raised by Birchmore, and was subsequently expended by the trustees on the building.

In accordance with the provisions contained in the trust deed, a mortgage of the premises was executed by the trustees to the Weymouth and Braintree Institution for Savings, in the sum of $3000, and this sum was received by the trustees and expended by them, in building the rectory and in the improvement of said lot of land.

A second mortgage of the premises was on May 9, 1872, executed by the trustees to Julius W. Tilson, reciting the terms of the trust in the deed from Richards, and further reciting that " whereas sundry debts are due, and owing to sundry persons, which have been contracted in the erection and construction of the buildings named in said indenture, and in the performance and execution of said trusts so far as said work has progressed." The habendum was, " To have and to hold said premises to said Tilson, trustee, his heirs and assigns, upon this special trust; that is to say, for the securing to the persons and firms hereinafter named, the sums respectively due and owing them from said White and Birchmore, the said trustees first named." [Then followed a description of the debt, amounting to $1139.54.] " Provided, that if the grantors, their heirs, &c., shall pay unto the said grantee, his executors, &c., the sums of money hereinbefore named for whose use and benefit, and to secure said sums to said persons, said Tilson holds this security on demand from the day of this date hereof, with interest on said sums at the rate of eight per centum per annum," " then this deed shall be void." The grantor Birchmore, as rector of the church, gave his consent to the conveyance. No money was received by the trustees as a consideration, for such conveyance, and such conveyance was made to secure the debts therein named, incurred by the trustees in building the rectory. The entire sum of money received by the said trustees and expended by them in the building of the rectory, and the improvement of the land, was $4011.

The defendant Birchmore, being rector of the church, took upon himself the principal charge of the work of building the house. His co-trustee, the defendant White, consulted with Birchmore in relation thereto, examined the accounts, was occasionally upon the grounds as the work went forward, and had full knowledge of all matters connected with the building of the rectory and the improvement of the land. The entire work was done, both as regards the building of the house and the improvement of the grounds, under the supervision of a person named Dalrymple, who was recommended to the trustees as a fit and suitable person by the grantor named in said trust deed and some of the principal donors contributing money in aid of the rectory.

The building was erected and the land improved, so that the said Birchmore moved into and occupied the house as a rectory on December 1, 1871, although the work upon the building and grounds was not at that time entirely completed.

The amount of debts incurred by the trustees in the execution of the trust and still unpaid is $1137.04.

The master reported that it was not seriously disputed on the part of the plaintiffs that the amount of money was expended and debts incurred by the said trustees in the sums set forth in their answer; " but it was contended, and evidence was offered to prove, that the trustees were guilty of gross negligence in the discharge of their duty, and that the amount expended by them in the execution of the trust was largely in excess of what could reasonably be required for such a purpose; and from the evidence and an inspection of the building and premises, I am satisfied that a building of the same general class could have been erected for a sum much less than the sum which has been expended by these trustees upon these premises, and I am also satisfied that there were errors in judgment in the supervision of the work, in consequence of which the building has settled, and the embankment wall in the rear of the building has twice fallen down, so that it would require more than $300 to put the premises in their former state of repair; but I find in view of the nature and purposes of the trust, and especially in view of the fact that the entire work was done under the supervision of a person who was recommended to the trustees by the grantor named in the trust deed, and by some of the principal donors contributing money in aid of the building, that the trustees have not been guilty of gross negligence, that they have acted with reasonable prudence, and that the disbursements have been made and the debts incurred in good faith by them, the said trustees."

For some time before the execution of the trust deed, there existed a dissension between the parish of Christ Church and its rector, the defendant Birchmore; and in February, 1872, the wardens and vestry of said church, and a majority of the congregation, made application to the bishop of the diocese for the appointment of a board of reference, under Canon IV., Title II., of the Canons for the government of the Protestant Episcopal

Church in the United States, a copy of which is in the margin.*
A board of reference was duly constituted under said canon, and
the defendant Birchmore was cited to appear before said board.
A hearing was had before the board on February 21, 1872, at
which both parties appeared, the parish being represented by its
senior warden. The question was asked of the representative of
the parish, whether the parish would abide by the decision of the
board, as required by the said canon, and an affirmative answer

* " Of differences between ministers and their congregations, and of the
dissolutions of a pastoral connection.

" § 1. In case of a controversy between any rector or assistant minister of
any church or parish and the vestry or congregation of such church or parish,
which cannot be settled by themselves, the parties, or either of them, may
make application to the bishop of the diocese, who shall thereupon notify each
of the contesting parties to furnish him with the names of three presbyters of
the diocese. The bishop shall add to them the names of three other presby-
ters, and the whole number shall then be reduced to five, by striking off the
names alternately by each of the contesting parties. Should either party re-
fuse or neglect to name three presbyters or to strike from the list as aforesaid,
the bishop shall act for the parties so refusing or neglecting. And in all the
proceedings aforesaid the vestry or congregation, as the case may be, shall be
represented by some layman of their number, duly selected by them for the
purpose: Provided, that the party or parties applying as above shall have first
given the bishop satisfactory assurance of compliance with whatever may be
required of them as the final issue of such proceedings.

" § 2. The five presbyters thus designated shall constitute a board of refer-
ence to consider such controversy; and if, after hearing such allegations and
proofs as the parties may submit, a majority of the presbyters shall be of opin-
ion that there is no hope of a favorable termination of such controversy, and
that a dissolution of the connection between such rector or assistant minister
and his parish or congregation is necessary to restore the peace of the church
and promote its prosperity, such presbyters shall recommend to the bishop that
such minister shall be required to relinquish his connection with such church
or parish, on such condition as may appear to them proper and reasonable.

" § 3. If any rector or assistant minister shall refuse to comply with the
recommendation of the bishop and presbyters, the bishop shall proceed to for-
bid him the exercise of any ministerial functions within the diocese, until he
shall retract his refusal; or if the vestry or congregation shall refuse to com-
ply with any such recommendation, they shall not be allowed any representa-
tion in the diocesan convention until they shall have retracted their refusal.

" § 4. When there is no bishop, the president of the standing committee of
the diocese shall perform all the duties herein allotted to the bishop : Provided,
that he shall not exercise any power under the preceding third section without
the aid and consent of some bishop of the church."

was given. It was a matter in dispute at the hearings before the master, whether, in answer to the same question, Birchmore gave his assent to abide by the decision of the board. The records of the board did not show that Birchmore gave such assent, and upon the evidence the master found that no such assent was given by him. A hearing was thereupon had before said board, and the following award was made:

" The board of reference convened by yourself under title second, canon fourth of the canons of the Protestant Episcopal Church in the United States, to consider the controversy existing between the rector and vestry of Christ Church, Hyde Park, in this diocese, are unanimous in their opinion that there is no hope of a favorable termination of such controversy, and that a dissolution of the connection between said rector and his parish is necessary to restore the peace of the church and promote its prosperity ; and we do also hereby recommend to you these following conditions as appearing to us proper and reasonable :

" First, that the Rev. John W. Birchmore be required to resign his office as rector of Christ Church, Hyde Park, on or before the 1st day of May, 1872.

" Second, that the parish be required to pay him in full to the aforementioned date his salary at the rate of $1600 per annum, as stipulated in the original call of November 17, 1869."

This award was delivered to the bishop on February 22. And on February 26, Birchmore made application to the bishop for a rehearing before said board. This application was granted, and the board was again convened, and a second hearing was had on March 19. At this second hearing the matter of the rectory was taken up, and evidence was gone into upon the subject before said board. On March 21 the board of reference returned to the bishop their original award, together with their reasons therefor, one of which was that the rector " has evinced no desire to convey the rectory to the parish, as bound by the deed of trust." The bishop thereupon sent to the parish and to the said Birchmore the following letter :

" Boston, March 22, 1872. Rev. and dear sir : The board of reference, who have had under patient consideration the differences between yourself and the parish of Christ Church, Hyde Park, have sent me the decision at which they have arrived. In

compliance with their recommendation, I hereby require you to relinquish your connection with the parish on the fifteenth day of May next, on condition that the parish pay you in full your salary up to the time when the resignation takes effect, at the rate of $1600 per annum, in accordance with their original agreement. I also require that the title to the rectory, now held by you and your co-trustee, shall be conveyed to the wardens and vestry, you meanwhile having the undisturbed occupancy of said rectory free of rent until your resignation shall take effect.

"Manton Eastburn, Bishop of the Diocese."

At the hearings before the master there was evidence to prove, and he found that a rectory, according to the usages of the Episcopal Church, is regarded as church property, and like all other church property is subject to the control of the church. The master also found that the defendant White had knowledge of the proceedings which took place before the board of reference, of the decision of said board, and the action of the bishop in relation thereto.

At a meeting of the parish of Christ Church, held immediately after the order of the bishop was received, resolutions were passed to pay the defendant Birchmore his salary, and the salary was paid in full up to May 15, 1872, as required by the order of the bishop, and the parish in all respects fulfilled the requirements of the bishop as contained in said order. Birchmore resigned the office of rector of said church, but did not convey the rectory to the parish as required by the said order.

Immediately after the order of the bishop was received, the senior warden of Christ Church, as a representative of the parish, caused a deed to be prepared, sufficient to convey the rectory to the rector, wardens and vestry of Christ Church, and delivered the same to the bishop, with the request that he would present it to the said Birchmore for execution; and the bishop presented the deed to Birchmore for execution; but Birchmore, after consulting with his co-trustee, declined to sign or execute the deed, giving as the reason therefor that the bishop had no jurisdiction over him in such matters. After the death of the bishop a like request was made of Birchmore by the standing committee of the diocese, which was refused for the same reason.

On May 16, 1872, the wardens and vestry addressed a letter to the said Birchmore, requesting him to quit and deliver up the rectory, and notifying him that if he remained he would be charged with rent ; and on June 6, following, Birchmore, with the knowledge and consent of his co-trustee, replied by letter, stating that they would deliver up the estate when they were relieved of the liabilities incurred in carrying on the trust.   The trustees gave no notice prior to the date of said letter that they should claim a lien upon the premises, or should hold the premises as security for the debts incurred ; and the trustees had not at any time prior to the time of the hearings before the master, other than by said letter, offered to convey the rectory to the parish, nor did the parish at any time offer to pay or to assume the debts incurred by the trustees in the execution of the trust.

Birchmore continued to occupy the rectory after the order of the bishop, dated May 15, 1872, was received, until on or about February 15, 1873, when, the trustees giving no notice to the parish, Birchmore left the premises, and since that time the premises have remained and still remain unoccupied, though the possession has been retained by the said trustees.

In September, 1872, a new rector was settled over the parish of Christ Church, and the parish desired to occupy the premises by their rector, and during the pendency of the hearings before the master a request was made by the parish of the trustees that the premises might be occupied by their rector; but the trustees refused to deliver up the premises to be so occupied except upon payment or security of the debts incurred by them in the execution of the trust.

The master found that the trustees did not at any time make any effort to rent the premises ; that the parish might have rented them or occupied them by their rector, the successor of the said Birchmore ; that $500 per annum would be a fair rental value of the same from May 15, 1872, and that the rental value of the premises would be reasonable damages to the parish for a refusal on the part of the trustees to convey the premises as required by the order of the bishop.

The master's report concluded as follows : " If upon the facts herein reported the trustees, or either of them, are to be charged with the rent of the premises from May 15, 1872, or with dam-

ages for the refusal or failure to convey the premises to the rector, wardens and vestry on May 15, 1872, I find the amount due the plaintiffs, on account of rent or damages up to the date of this report, August 5, 1874, to be $1111.10. If upon the facts herein reported the trustees, or either of them, are to be charged with rent or damages during the occupancy of the premises by said Birchmore from May 15, 1872, to February 15, 1873, I find the amount due the plaintiffs, on account of rent or damages, to be $375."

*G. W. Morse & Z. S. Arnold*, for the plaintiffs.

*E. Ames*, for the defendants.

MORTON, J. The object of the deed of trust from Richards was that the defendants should erect upon the land thereby conveyed to them a rectory for the use of Christ Church in Hyde Park, and that after its completion it should be conveyed to the rector, wardens and vestry of said church.

The defendants do not deny that it is their duty to convey the premises to the plaintiffs, but they claim that before doing so they are entitled to be paid or indemnified for all expenses and liabilities incurred by them in the execution of the trust. The plaintiffs claim that the defendants have expended more than they were authorized by the trust deed to expend, and ought not to be allowed for such excess as a charge upon the estate. The deed authorizes the trustees to execute a mortgage of the premises for three thousand dollars, " to be applied to erect and finish the buildings on the premises, or in aid of such erection," but it does not limit the trustees to this amount, as the cost of the buildings, nor provide that they shall not create other liens or incumbrances. On the contrary, it is clear that all the parties understood that more than three thousand dollars would necessarily be expended by the trustees, and that other liens and incumbrances might be placed upon the premises. The deed accordingly carefully provides, that after the buildings are erected they are to be conveyed to the rector, wardens, and vestry, subject " to said mortgage, if subsisting, and subject to all incumbrances, liens, and mortgages thereon;" that no personal liability shall be incurred by the trustees by reason of executing such mortgage; and that "they are not to be subjected personally to any cost or expense, but all costs and expenses are to be

chargeable upon said estate." It was clearly the purpose of the donor and of the trustees, that the expenses of building the rectory, in excess of three thousand dollars, should be a charge upon the estate, and we are of opinion that the trustees have an equitable lien for such amount as is due to them for all the expenses reasonably incurred in executing their trust.

The master, to whom the case was referred for the purpose of determining the facts, has found that the expenditures and disbursements claimed by the defendants were made in good faith, and that they have acted with reasonable prudence. It follows that such expenditures, so far as they have not been paid to the trustees, ought to be allowed them as a charge upon the trust estate.

For the same reasons the debts incurred by the trustees in erecting the buildings, being unpaid, and having been incurred in good faith and in the exercise of reasonable prudence, should be allowed them. The second mortgage was given to Tilson as trustee for the sole purpose of securing these debts. The master has not passed upon the question of the validity of this mortgage, and we do not understand that this question is of practical importance in this case. If it is void the trustees have an equitable lien upon the estate for the same amount for the debts incurred by them in executing this trust.

The only other question presented upon the facts found by the master, is as to the claim of the plaintiffs that the trustees in settling their account should be charged with a reasonable rent of the rectory after the defendant Birchmore resigned the rectorship.

He resigned in May, 1872, and continued to occupy the premises until February 15, 1873. He thus directly received a benefit from the estate, with the knowledge and assent of his co-trustee, and we think they are chargeable for the amount found by the master as the fair rent for this time. It is the same in substance as if the trustees had received rents from the trust estate from a third person, which upon familiar principles would belong to the *cestui que trust*. But a majority of the court are of opinion that the further claim of the plaintiffs, that the trustees should be charged a reasonable rent for the premises after Birchmore left them, ought not under the circumstances of this case

to be allowed. For this time no rents were received, and neither trustee received any benefit from the estate. The premises were designed solely for the use of the rector of the church, and it was not any part of the purposes of the trust that the trustees should lease them to others. It is doubtful if they had the power to lease them. It is true that if they had done so and received rents they would be chargeable therewith, but they were not guilty of negligence in not doing so.

Nor are they chargeable upon the ground that they refused to convey to the church and thus deprived them of the use of the rectory, to which they were entitled. The master finds that after a new rector was settled over the parish, the trustees were requested to permit him to occupy the premises, " but that the trustees refused to deliver up the premises to be so occupied except upon payment or security of the debts incurred by them in the execution of the trust." They offered to make a conveyance upon such payment or security, but the parish declined to comply with the condition. The trustees, as they had an equitable lien upon the estate, were entitled to insist upon this condition, and cannot be held guilty of any negligent or wrongful act in refusing to convey or to yield the possession of the premises until they were paid or secured.

The facts reported by the master as to the proceedings before the board of reference appointed under the general canons of the Episcopal Church, have no bearing upon this case. One of the defendants was not a party to those proceedings, and the board did not attempt to adjudicate upon the subject matter of this suit. Their award provided only that the defendant Birchmore should resign his office as rector, and that the parish should pay him his salary, but contained no provisions as to the conveyance of the rectory or the accounts between the parish and the trustees.

The result of the whole case is, that the trustees are to be allowed the expenditures made and the liabilities incurred by them as found by the master, and are to be charged with the amount found by the master as the fair rent of the rectory while occupied by the defendant Birchmore after his resignation ; the plaintiffs are to pay or indemnify the defendants for the balance of expenditures and liabilities incurred by them in executing the

trust, and thereupon the defendants are to convey the trust estate to the plaintiffs.

A hearing may be had, if necessary, before a single justice to settle the form and details of the decree.

*Decree accordingly.*