CHARLES H. WHITECAR et al.

*v.*

ELWOOD MICHENOR et al.

The trustees of a Methodist Episcopal church closed the church building against the duly-appointed preacher, on the ground that it was not for the interest of the church that he should be its pastor, and that he was appointed against the wish of the majority of the members.—*Held,* that they had no right to do so, and, after answer, a mandatory injunction was issued requiring them to open the building to the preacher and the church.

Bill for injunction. On motion for mandatory injunction. On order to show cause. On bill and answer.

*Mr. S. K. Robbins* and *Mr. B. D. Shreve,* for complainants.

*Mr. R. S. Jenkins,* for defendants.

Whitecar *v.* Michenor.

THE CHANCELLOR.

The complainants are Rev. Dr. Charles H. Whitecar, a minister of the Methodist Episcopal denomination, who has been duly appointed for the present conference year to the charge over the Methodist Episcopal Church at Moorestown, and certain of the members of that church. The defendants are the trustees of that church. The bill states that the defendants, on the 29th of March last, closed the church against the members and congregation, and have kept it closed ever since. It prays an injunction to compel them to open it for the religious uses to which it was dedicated. It appears from the bill and the admissions of the answer, that the church was organized under the rules, regulations and discipline prescribed by the general conference of the Methodist Episcopal Church in the United States, and was duly incorporated on or about the 21st of August, 1815, under the act " to incorporate trustees of religious societies," by the name of " The Methodist Episcopal Church at Moorestown ;" that Rachel S. Andrews, in September, 1858, conveyed to Deacon Brock, Caleb Fenimore, Thomas Marter, James Moore, John Ireland, Isaac Browning and Paul Crispin, " trustees of the Methodist Episcopal Church at Moorestown, in the county of Burlington and State of New Jersey," the lot of land on which the church edifice is built, for the use and benefit of the members of the Methodist Episcopal Church at Moorestown, and that afterwards

NOTE.—In the Methodist Episcopal Church, to worship as members, the preacher sent by the bishop must be accepted, *Henderson* v. *Hunter, 59 Pa. St. 335.*

Whether elders and deacons of that church, appointed and ordained, are ministers, *Roberts* v. *State Treasurer, 2 Root 381; Kibbe* v. *Antram, 4 Conn. 134; Goshen* v. *Stonington, Id. 209;* see *Com.* v. *Spooner, 1 Pick. 235; Londonderry* v. *Chester, 2 N. H. 268; State* v. *Bray, 13 Ired. 289; State* v. *Willis, 9 Ark. 196; Howard* v. *American Peace Soc., 49 Me. 288.*

An injunction was granted in the following instances :

Where the Archbishop of Canterbury, by his will, gave all options which should fall to the defendants Chapman and others in trust, to present his son in the first place, and the others named in the will in succession. A vacancy happening, Chapman procured himself to be presented for installation and induction, *Potter* v. *Chapman, 1 Dick. 146.*

To restrain the trustees of a church from electing as a minister and introducing into the pulpit a person not duly licensed, *Milligan* v. *Mitchell, 1 Myl.*

Whitecar *v.* Michenor.

the members of that church built thereon the church edifice in
question as a place of worship, according to the rules of faith of
the Methodist Episcopal Church in the United States, and sub-
ject to its discipline, and that the church edifice has been used as
such from the time of its erection until it was closed by the
trustees on the 29th of March last; that on the 27th of that
month the Rev. Dr. Wiley, one of the bishops of the Methodist
Episcopal Church of the United States, and in whom, by the
rules and regulations of the general conference, was reposed the
power, and on whom was imposed the duty of appointing for the
present conference year the ministers for the various churches
constituting the New Jersey Annual Conference, to which annual
conference the church at Moorestown belongs, appointed Dr.
Whitecar to that church for that year (being his second annual
appointment to that church) as minister in charge, and the latter
accordingly entered upon the discharge of his duties, and in the
course thereof proceeded to the church building on the 29th of
March for the purpose of holding the usual prayer-meeting there,
but found the doors of the church locked and a notice thereon,
dated that day, and purporting to be given by the board of trus-
tees and signed by its secretary, that the church would remain

& K. 446, 3 Myl. & Cr. 72; see *Humbert* v. *St. Stephens Church, 1 Edw. Ch.*
*308; Lawyer* v. *Cipperly, 7 Paige 281.*

Where the vestry of a Protestant Episcopal Church dismissed the rector
without his consent, *Batterson* v. *Thompson, 8 Phila. 251; see Youngs* v. *Ran-*
*som, 31 Barb. 49; Congregation* v. *Peres, 2 Coldw. 620.*

Where a Roman Catholic bishop removed a priest arbitrarily, and forbade
him to exercise the functions of his office, *O'Hara* v. *Stack, 90 Pa. St. 477.*

To restrain one of two congregations entitled to the joint use of church
building, from inviting another pastor and congregation to worship there,
after its own minister had resigned, *Cammeyer* v. *German Lutheran Church, 4*
*Edw. Ch. 223.*

To compel the trustees of a church, who persisted in retaining a pastor after
he had been cited before the church tribunals, and defied them, to permit
clergymen in good standing to officiate, *Skilton* v. *Webster, Brightly 203.*

Where a canon of the church required the bishop to consult with the war-
dens and lay representatives of the parish before appointing a rector to fill a
vacancy, which the bishop disregarded, *Johnson* v. *Glen, 26 Grant's Ch. 162.*

To prevent the granting of a license to a minister to preach, where the
trustees, who had the power of selection, disregarded the statutory require-

Whitecar v. Michenor.

closed until further notice; that he and the members of the
church there assembled were compelled to disperse without gain-
ing entrance to the church; that the members present appointed
a committee of six of their number to call with the minister upon
the president of the board of trustees and learn the cause of the
closing of the church and preventing the minister and the mem-
bers from holding service therein; that the committee called on
the president and made the inquiry; that at the time another of
the trustees was present with the president; that in reply to the
inquiry the president said that he had not the keys and did not
know where they were, and, at the same time, said to the com-
mittee that the trustees had the power and authority to close the
church, but gave no reason for doing so; that the committee, on
the same occasion, asked him to show them the deed of the
church property, but he, while admitting that he had it in his
house, where the interview took place, refused to show it to them.
It also appears, by like statement and admission, that the trustees
have kept the church locked ever since the date mentioned, the
29th of March, and have refused to permit it to be used for
public worship or even for the meeting of the quarterly confer-
ence, which is presided over by the elder of the district.     The

ments as to the residence, place of education and personal qualifications of
their appointee, *Atty.-Gen.* v. *Earl of Powis, Kay 186;* or where the mode of
election of a vicar was irregular as to the voting, *Edenborough* v. *Canterbury, 2
Russ. 93; Atty.-Gen.* v. *Pearson, 3 Meriv. 352;* but see *Leslie* v. *Birnie, 2 Russ.
114; Davis* v. *Jenkins, 3 V. & B. 151;* or any informality, acquiesced in for a
long time, in the mode of electing the trustees who appointed the vicar, *Atty.-
Gen.* v. *Cuming, 2 Y. & C. 139.*

To restrain a church warden from illegally preventing a chaplain's perform-
ing divine service, *Atty.-Gen.* v. *St. Cross Hospital, 18 Beav. 601, 8 De G. M.
& G. 38.*

To exclude from a church one not duly chosen as its pastor, but who with
the aid of a minority persisted in preaching there and in locking out the right-
ful trustees, *Perry* v. *Shipway, 4 De G. & J. 353.*

To prevent the trustees from excluding the minister from the parsonage,
*Ward* v. *Hipwell, 8 Jur. (N. S.) 666; Spurgin* v. *White, 2 Giff. 473.*

To enjoin an illegal dismissal of a pastor, *Dangars* v. *Rivaz, 28 Beav. 233,
33 Beav. 621;* see, also, *Atty.-Gen.* v. *Litchfield, 5 Ves. 825; Carter* v. *Cropley,
8 De G. M. & G. 680.*

To restrain a minister from occupying the pulpit and preaching in a church,

Whitecar v. Michenor.

defendants, by their answer, assert their loyalty to the Methodist Episcopal Church in all respects, and their willingness to obey its rules, regulations and discipline, so far as they comport with their legal obligations, as they understand them, under the before-mentioned deed of trust, and allege that their action in closing the church against Dr. Whitecar is in accordance with the expressed wishes and determination of the majority of the members of the church, and because they are of opinion that the welfare of the church demands that he should not be its pastor.

On the argument of this motion it was stated in behalf of the defendants, and it is so averred in the answer, that their action in closing the church was due to the fact that in view of the trust in the deed for the land on which the church edifice is built, they considered it their duty to obey the wishes of the majority of the members of the church as to who should officiate as its settled pastor, notwithstanding those wishes may be in conflict with the rules, regulations and discipline of the Methodist Episcopal Church. This view, however, is entirely erroneous. Not only so, but there is, in fact, no ground whatever for assuming that, by reason of anything in the deed, they are under any obligation different from that which would devolve upon them merely as

contrary to the rules and discipline of the church, although the majority of the congregation approved, *Sarver's Appeal, 81\* Pa. St. 183 ; Trustees* v. *Stewart, 43 Ill. 81 ; Hale* v. *Everett, 53 N. H. 9.*.

To remove church trustees who were perverting or diverting the original trusts thereof, *Kinskern* v. *Lutheran Church, 1 Sandf. Ch. 439 ; Atty.-Gen.* v. *Pearson, 3 Mer. 352, 7 Sim. 290 ; Field* v. *Field, 9 Wend. 394 ; Shore* v. *Wilson, 9 Cl. & Fin. 355 ; Gass's Appeal, 73 Pa. St. 39 ; Lutheran Church* v. *Gristgan, 34 Wis. 328 ; Kisor's Appeal, 62 Pa. St. 428 ; First Church* v. *Filkins, 3 T. & C. (N. Y.) 279 ; Reformed Society* v. *Draper, 97 Mass. 349 ; Baptist Congregation* v. *Scannel, 3 Grant's Cas. 48 ; Bartholomew* v. *Lutheran Congregation, 35 Ohio St. 567.* See *Hullman* v. *Honcomp, 5 Ohio St. 237.*

Where the articles of incorporation provided that the trustees should admit all evangelical ministers of other churches " at any time the Methodists are not using the house themselves," and certain " Seventh-Day Adventists " persisted in their right to use the building, they were attached for contempt, *State* v. *Baldwin, 57 Iowa 266.*

An injunction was refused in the following instances:

Where the congregation was independent, or not connected with any particular denomination, *Trustees* v. *Proctor, 66 Ill. 11; Calkins* v. *Cheney, 92*

Whitecar *v.* Michenor.

trustees of the church, had the deed been made directly to the corporation and expressed no trust. The deed, as before stated, was made not to the corporation, but to certain persons who, at the date of the conveyance, were the trustees of the church. It conveys the property to them with the addition of trustees of the Methodist Episcopal Church at Moorestown, in the county of Burlington and state of New Jersey after their names, in trust for that church, and the only proper use and behoof of the members thereof. Neither the defendants nor any of them are parties to that deed, and neither they nor any of them claim by descent, grant or devise from the grantees therein. They are merely trustees of the corporation, elected in February, 1882. Neither the legal nor the equitable title to the property is in them. The latter title is in the corporation, and they merely represent the corporation as trustees holding the title of the corporation on a simple trust which makes them bare depositaries of the title. *Morgan* v. *Rose, 7 C. E. Gr. 583.* And the case would not be different if they held the legal title under the deed. But they do not hold that title. By the act of incorporation the trustees did not acquire the authority which they claim to close the church building at their discretion. *Morgan* v. *Rose, ubi sup.*

---

*Ill. 463; Smith* v. *Nelson, 18 Vt. 511; African Church* v. *Clark, 25 La. Ann. 282; Cooper* v. *Gordon, L. R. (8 Eq.) 249; Perry* v. *Shipway, 1 Giff. 1; 4 De G. & J. 353; Lucas* v. *Case, 9 Bush 297; Grosvenor* v. *Society, 118 Mass. 78.*

Where the pastor withdrew from the synod with which the church was connected, attached himself to another, and introduced into the service practices not approved by the former synod, *Lutheran Church* v. *Maschop, 2 Stock. 57.* See *Isham* v. *Dunkirk, 63 How. Pr. 465; Dressen* v. *Bramier, 56 Iowa 756.*

Where an incumbent refused to allow the complainant, an attendant at an Episcopal church and one of the lay members of the synod, to partake of the communion; and to prevent his threatened suspension or excommunication, *Dumret* v. *Forneri, 25 Grant's Ch. 199.*

Where the minister of an independent church, who was only entitled to the voluntary contributions of the congregation, was dismissed, *Porter* v. *Clark, 2 Sim. 520.*

An action at law may be sustained by a minister illegally barred out of his church, *Lynd* v. *Menzies, 4 Vr. 162; St. George's Church* v. *Cougle, 1 Hannay 620.*

Whether *certiorari* will lie to remove an election of a minister, *Ex parte Beek 2 Pugsley 66.*

Whitecar v. Michenor.

Nor have they power, under the discipline of the church, to close it against the duly-appointed preacher, though a majority of the members are desirous that they should do so. Nor have they such power under the trust in the deed. The trust is that the grantees therein named, and the survivors of them, their successors and assigns, will hold the property for the only proper use and behoof of the members of the Methodist Episcopal Church at Moorestown, their successors and assigns, forever. It is admitted that that church was organized under the rules, regulations and discipline prescribed by the General Conference of the Methodist Episcopal Church of the United States, and it is not denied that it has been so ever since. It was incorporated in 1815, now nearly seventy years ago. The very name of the corporation indicates its character and connection. As a Methodist Episcopal Church it is subject to those rules, regulations and discipline. It is not alleged that the appointment of the preacher was unauthorized or irregular, but that a majority of the members of the church desire that the preacher appointed shall not be permitted to act as the pastor of the church—to discharge the duties of the place to which he has been duly appointed. It is not claimed that there is any warrant in the discipline of the church for the action of the trustees, nor that the discipline provides that the wishes of the majority of the members shall de-

---

*Mandamus* will not lie to compel an archbishop to examine a candidate for orders, who has been nominated by a parish vicar, *Rex* v. *Archbishop of Dublin, Alc. & Nap. 244.*

After a minister has been deposed by the church tribunals, the courts of law cannot interfere to protect his right to preach or to the emoluments of his place, unless he has been unlawfully deprived of some civil rights, *Chase* v *Cheney, 58 Ill. 509; Walker* v. *Wainwright, 16 Barb. 486; Runkel* v. *Winemuller, 4 Harr. & McH. 429; Union Church* v. *Sanders, 1 Houst. 100; Brosius* v. *Reuter, 1 Harr. & Johns. 551; Dutch Church* v. *Bradford, 8 Cow. 457;* see *Connitt* v. *Reformed Church, 4 Lans. 339, 54 N. Y. 551; Trustees* v. *Seaford, 1 Dev. Eq. 457; Forbes* v. *Eden, L. R. (1 Sc. App.) 568; O'Hara* v. *Stack, 90 Pa. St. 477; Ferguson* v. *Earl of Kinnoul, 9 Cl. & Fin. 251; Bouldin* v. *Alexander, 15 Wall. 131.*

After deposition, a clergyman may be required to surrender or convey church property in his possession, *Sanson* v. *Mitchell, 6 Grant's Ch. 582; Bradbury* v. *Birchmore, 117 Mass. 569; Chatard* v. *O'Donovan, 80 Ind. 20.*— REP.

termine whether the preacher appointed to the charge shall act as such or not. If the church belongs to the Methodist Episcopal connection, as it is admitted it does, there is no warrant of law, discipline or usage for the acts of the defendants. What is known as the itinerancy of the preachers and the absolute power of the bishops over the appointments of the preachers to the churches, is part of the discipline.

Chief-Justice Gibson said, in *Commonwealth* v. *Cornish, 13 Pa. St. 288, 290,* that in the Methodist Episcopal Church in England and America the election and ordination of the priesthood by the general or annual conference, the ordination of them by laying on of hands by a bishop and elders, and fixing of their appointments by the bishop, are cardinal points, the last of them a distinctive one. He adds, that it is the rock on which the church is founded and on which it has prospered. Remove the church from it, he says, and it ceases to be methodistic; and he also says that the election and ordination of elders, and the fixing of their appointments, are regulated by articles which are fundamental. Said Judge Edmonds, in the case of *People* v. *Steele, 2 Barb. 397, 413:* "I am irresistibly conducted to the conclusion that the itinerancy of the priesthood, enforced by the power of the episcopacy, is now and for more than a century has been the well-established practice of this church, is clearly defined in the doctrines and discipline,' and has been again and again understandingly and advisedly justified and defended by the highest ecclesiastical tribunal known in its constitution." In the case last cited, which is the leading case on the subject, and which in its circumstances was substantially identical with this, the very question presented here as to the right of the trustees of a Methodist Episcopal Church to exclude the bishop's appointee was judicially decided against the trustees. There, as here, the trustees claimed to be supported in their action by the majority of the members of the church. See, also, *Brunnenmeyer* v. *Buhre, 32 Ill. 183.*

But it is urged by the defendants that according to the practice of this court there should be no mandatory injunction in this case before the final decision of the cause. On the filing of the

bill an injunction was granted, but it was not mandatory in its character. It indicated that in the judgment of the court, on the case made by the bill, the defendants ought to be restrained from closing the church building against the preacher and the church. It did not, however, require them to open it, and they refused to open it under the non-mandatory prohibition. Their refusal was not a violation of the command of the writ, and the application for an attachment against them for contempt was therefore properly denied. The present application was subsequently made to me for a mandatory injunction. I thereupon granted an order to show cause why such an injunction should not be granted, and the defendants then put in their answer. The whole case is now before me, and the defendants have been heard upon the application. I am of the opinion that judged by their answer, and assuming the truth of the facts therein alleged, they are without justification for the act complained of, and I see no reason, either jurisdictional or prudential, for refusing the writ. While the jurisdiction of the court to interfere by way of mandatory injunction should be exercised with the greatest possible caution, yet where the right to restrain the violation of which the injunction is asked for is clearly made out, and there is a present want of the use of that right, the court should not hesitate. The court is always very reluctant to grant a mandatory injunction on an interlocutory application, but where extreme or very serious damage would ensue from withholding it, as in cases of interference with easements or other cases demanding immediate relief, it will be granted. *Joyce Prin. Inj. 57; Rogers Locomotive Works* v. *Erie R. R. Co., 5 C. E. Gr. 379; Thropp* v. *Field, 11 C. E. Gr. 82; Longwood Valley R. R. Co.* v. *Baker, 12 C. E. Gr. 166.* In this case it is not reasonable, under the circumstances, to permit the defendants to deprive the church of the use of the edifice until the final hearing. The property is held by the defendants on a simple trust, and they are unwarrantably withholding the use of it from those for whose use they hold it. They have been heard and their defence fully laid before the court and considered. There will be an injunction commanding them to desist and refrain from continuing to keep the church closed at such times as

to prevent the preacher, Dr. Whitecar, and the members of the church from using it for the purposes of religious worship and church business.