The defendants are trustees of Saint Paul's African M.E. Church of Willow Street in the City of Trenton, which was organized under the rules and discipline prescribed by the general conference of the African Methodist Episcopal Church in America. The members of the local society maintain an edifice for religious worship on Willow Street at Trenton. It is declared in the verified bill of complaint that the bishop who is empowered to appoint ordained preachers to pastoral charges within the district in which the Trenton church is situate, selected the complainant to serve as pastor of Saint Paul's Church. Thereupon; it is charged, the trustees resolved to close the church and suspend the observance therein of the religious practices to which the building was dedicated.
The trustees were temporarily restrained from the accomplishment of so grave an undertaking until in response to an order to show cause a more comprehensive disclosure of the facts could be elicited. It now transpires that the defendants challenge the authority of the bishop to effectually appoint a preacher to a pastoral charge unless the appointment is ratified and confirmed by the trustees of the society to which he is assigned. This averment is not sustained by the presentation of any citation of ecclesiastical law, usage or principle of the denomination with which the church is affiliated.
The defendants contend that the bill is unavailing because its object is merely to obtain an adjudication of the right of the complainant to the office of pastor of the church. If that is the paramount controversial issue, then it is elementary that an appropriate remedy is available to the complainant at law in a proceeding in the nature of quo warranto. Scott v.Cholmondeley, 129 N.J. Eq. 152; 18 Atl. Rep. *Page 595 
2d 617. I do not perceive such to be the purpose of the complainant as exhibited by the bill. He assumes that the authenticity and validity of his appointment and assignment are not impugned and the more distinct object of the suit is to compel the trustees to open the church and to keep it open as a place of religious worship in which the complainant can discharge his duties as pastor. The case of Whitecar v. Michenor,37 N.J. Eq. 6, is analogous in that a like remedy was there sought against trustees who had denied the duly appointed pastor admission to the church building.
Contemplating the bill in that aspect, it is conspicuous that the pastor is the sole complainant. It is not evident that he is a member of the society or of the congregation for whom the trustees are presumed to act and to whom ordinarily they may be required to respond in matters appertaining to the maintenance and management of the trust property. The complainant asserts no rights other than those appurtenant to his appointment as preacher. Significantly, no member of the local church expresses objection to the apprehended action of the trustees, and the highest judicatory of the denomination does not complain of any infringement of its property rights. R.S. 16:1-25; N.J.S.A.16:1-25. The controversy has been submitted to the Board of Bishops of the African Methodist Episcopal Church in America but has not as yet received consideration.
The question therefore becomes opportune whether a pastor in the circumstances here revealed has the status to invoke the injunctive power of this court against the authorities of the society in the performance of temporal duties in respect of the property of the society.
The title documents are not exhibited. It is inferred that the title to the church edifice is in the local society or its board of trustees. Moreover, in general a conveyance to a religious society implies a trust. The closing of a church may be regarded as a diversion from the use to which it was dedicated. But the general rule is that only a cestui que trust can oblige a trustee to respond in equity for a breach of trust involving an alleged misuse of the trust property. Accordingly, it is noticed that in Whitecar v. Michenor, *Page 596 supra, the complainants were the minister "and certain of the members of the church."
True, it was resolved by our Supreme Court in Lynd v.Menzies, 33 N.J. Law 162, that a minister has a right, in the nature of an easement, to enter the church edifice, on all occasions set apart in the parish for divine services and that a substantial interference with such right is actionable at law. Nevertheless, Vice-Chancellor Pitney, having considered the decisions in Whitecar v. Michenor, supra, and Lynd v.Menzies, supra, expressed the following conclusion in Everett
v. First Presbyterian Church, 53 N.J. Eq. 500, 513;32 Atl. Rep. 747:
"Neither of these cases militates against the general principle of law that only the members of the congregation, as the cestuique trustent, have a right to a standing in a civil court to prevent a misuse of the property of the society."
The learned Vice-Chancellor (at p. 511) made the following informational observation:
"In all the adjudged cases in which a court of equity has been successfully impleaded to restrain the action of the temporal authorities of a religious association it has been invoked at the instance of one of the members of that society. The spiritual officers of the society have sometimes been joined as complainants, but in all cases some individual member has been present as a complainant." See, also, MacKenzie v. Trustees ofPresbytery of Jersey City, 67 N.J. Eq. 652, 677;61 Atl. Rep. 1027; Barna v. Kirczow, 71 N.J. Eq. 196, 201;63 Atl. Rep. 611.
The infirmities in the complainant's cause of action to which I have referred constrain me in the existing state of the proofs, to advise an order dismissing the pending order to show cause and dissolving the restraint heretofore imposed upon the defendants. *Page 597